FILED
2003 MAR -3 PM 4: 33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEDDY MATHEWS,

    PLAINTIFF,

v.　　　　　　　　　　　　　　　　　　　　CASE NO.: CV-02-J-1153-S

IKON OFFICE SOLUTIONS, INC., and
BOBBY EDGIL,

    DEFENDANTS.

ENTERED
MAR 3 2003

### MEMORANDUM OPINION

Pending before the court is the defendants' motion for summary judgment (doc. 25), evidence in support of said motion (doc. 26) and memorandum in support of their motion, to which the plaintiff has responded by submitting evidence (doc. 30) and a response in opposition to said motion. The defendants thereafter filed a reply. The court having considered the pleadings, evidence and memoranda of the parties finds as follows:

### I. Factual Background

Plaintiff sues her employer and Bobby Edgil, her supervisor, for violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, the Family and Medical Leave Act (FMLA),

31

29 U.S.C. §§ 2601 *et seq.*, and state law claims for breach of contract and fraud. The fraud claim is the sole count of the complaint which is brought against defendant Edgil.

The plaintiff is 45 years old. Plaintiff depo. at 19. She began working for defendant IKON in May, 1998 and thereafter became a sales representative for defendant. Plaintiff depo. at 102-105. In May, 2000, the plaintiff was hospitalized for depression and was off work for three months. Complaint, ¶¶ 11, 12. This was the only time that depression interfered with her ability to work. Plaintiff depo. at 79-82; Plaintiff Ex. 10. She was placed on FMLA leave as of May 5, 2000. Plaintiff depo. at 181, 198-201. The plaintiff was released to work without restrictions on August 1, 2000. Defendant Ex 8. She returned to work the following day. Plaintiff depo. at 83, 244; defendant Exs. 5 and 9. At that time, James Smith was her supervisor. Plaintiff depo. at 257-259.

The plaintiff claims that IKON made many changes while she was on leave. Complaint, ¶ 13; plaintiff depo. at 62. She states that, although she returned to the same position with the same benefits after her leave her job duties were different; she was excluded from meetings and all her accounts were taken away from her. Plaintiff depo. at 215-216, 250-251, 255-256; Smith depo. at 54; Edgil depo. at 42, 45.
In September, 2000, defendant Edgil became her supervisor. Edgil depo. at 21, 32.

The plaintiff asserts she did not get accounts back after her leave and that Dean Farrar took over her accounts while she was gone.[1] Plaintiff depo. at 215-216, 218. Eventually, Edgil gave Farrar all her accounts. Plaintiff depo. at 216-221, 226-228, 232, 303. Farrar states he did not get plaintiff's accounts until the plaintiff was fired. Farrar depo. at 23, 25-26; Edgil depo. at 43-44. Smith testified that he personally handled the plaintiff's accounts while she was on leave. Smith depo. at 53, 92. Smith states none of plaintiff's accounts were taken away from her. Smith depo. at 55, 73, 93. The plaintiff alleges she asked why her accounts were taken away from her and Edgil stated he was unsure if she was going to get sick again in six months. Plaintiff depo. at 254-255, 271-273. He also said she might have to go back to the hospital, in reference to her ability to do her job. Plaintiff depo. at 273, 276. Edgil denies this. Edgil depo. at 96-98.

The plaintiff testified that she could not sell anything after her leave because prices had changed and she did not get a new price list, she could not get her computer to work, and no one would help her. Plaintiff depo. at 63, 237, 242-243, 246. Smith testified he helped her with it. Smith depo. at 97. Edgil stated that training was offered on Thursdays and demonstrations were videotaped. Edgil depo. at 93. The plaintiff was given a notebook with the new price list in it, but did not know it had the

---

[1] Plaintiff states Edgil gave them to Farrar, but Smith was plaintiff's manager while she was on leave.

3

price list in it and never looked because she thought it was the compensation plan. Plaintiff depo. at 249-250; Smith depo. at 56-57. She never asked Smith about pricing or the new computer program. Smith depo. at 94-95. Farrar also testified that the plaintiff never asked for the price list, which he had hanging on the wall of his cubicle. Farrar depo. at 50-51. Edgil also testified that the plaintiff never asked him about a new price list. Edgil depo. at 86.

The plaintiff testified that there was a phone number she could call for information about products. Plaintiff depo. at 144-145; 149-150. Additionally, IKON had an employee whose job was training people on the computer program in question Edgil depo. at 86.

The plaintiff alleges all the leads were given to the young males, but names only Dean Farrar. Plaintiff depo. at 60, 333, Farrar depo. at 7. She alleges she was not invited to sales meetings by Edgil after her FMLA leave.[2] Plaintiff depo. at 251-252. He invited everyone but her to those meetings or to meet him for drinks and a sales meeting at a bar. Plaintiff depo. at 252. Farrar stated that sales meetings were never held at a bar and that the plaintiff was present for all the meetings. Farrar depo. at 29-30, 60. He also stated that the plaintiff was late to most sales meetings by thirty minutes. Farrar depo. at 63-64, 71; *see also* Smith depo. at 62. Edgil states the

---

[2]In her deposition, the plaintiff testified to things said at a sales meeting. Plaintiff depo. at 343.

4

plaintiff missed some sales meetings for doctor's appointments and others, she just missed. Edgil depo. at 46.

The plaintiff also asserts that, before her leave, she was promised a promotion and better territory. Plaintiff depo. at 70-74. Smith testified this never happened. Smith depo. at 119.

After Edgil became her supervisor, he placed the plaintiff on probation for being absent two times in one week. Plaintiff depo. at 262. Edgil states this was because of her absenteeism, tardiness, and not making quota. Edgil depo. at 97. Plaintiff received a letter from him stating she had to work from 8 to 5 every day and make quota of $35,000.00 each month. Plaintiff depo. at 263-65; Plaintiff. Ex 9. The plaintiff testified that no one made quota. Plaintiff. depo. at 280; *see also* Edgil depo. at 61-62; Cole depo. at 70; defendant Ex. 16. No one else was fired for not making quota. Edgil depo. at 61. Smith testified that neither plaintiff nor other sales representatives made quota every month. Smith at 42-44.

Plaintiff told Edgil she did not think the letter was fair, and was allowed 8 days more than the other employees to make quota. Plaintiff depo. at 269-270. She did not make quota for October, 2000, but neither did anyone else. Plaintiff depo. at 280.

Plaintiff was given a final warning on November 29, 2000, that she would be fired if her performances did not improve. Plaintiff depo at 285; defendant Ex. 18; *see*

*also* Edgil depo. at 120.

On December 19, 2000, she was fired. Plaintiff depo. at 286-87. The plaintiff alleges she was replaced by a 23 year old and referred to as an "old-timer" while employed. Complaint ¶¶ 29-31. The plaintiff testified that Edgil told her he wanted all young people with college degrees and no sales experience so he could teach them how to sell, that she would be a handicap on this team, that she was too old, and possibly not stable enough. Plaintiff depo. at 288-290. Plaintiff then states he said "young males," not "young people," and that he did not want any women on his team. Plaintiff depo. at 290. Edgil states all he said was she was being terminated. Edgil depo. at 100. He told her that her performance was unacceptable and that he did not see her being part of the sales team the next year. Edgil depo. at 101. Edgil denies making any of the comments plaintiff states he made. Edgil depo. at 103-104.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers each of the plaintiff's claims.

#### A. Gender Discrimination (Count 1)

The plaintiff is a member of a protected class and she suffered an adverse employment action. She asserts similarly situated males were treated more favorably than she and that she was qualified for her job. *See e.g., Rice-Lamar v. City of Fort Lauderdale, Florida*, 232 F.3d 836, 842 (11th Cir.2000). The plaintiff testified that she was fired because of her gender. Plaintiff depo. at 31. The court finds this satisfies the plaintiff's burden to establish a prima facie case under the familiar *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The plaintiff alleges she was excluded from a golf game in September, 2000, a party at Edgil's house and sales meetings because of her gender. Plaintiff depo. at 32, 33-34, 45-48, 50, 54, 299. She claims that her male coworkers would go out for drinks after work. Plaintiff depo. at 299. Edgil says anyone who wanted to go did, and he does not remember if plaintiff ever went or not. Edgil depo. at 34-35.

8

The plaintiff has asserted that she was fired, in part, because she is female. She alleges that Edgil told her he was firing her because he wanted only men on his team. Edgil denies this. The defendant maintains the plaintiff was terminated for being chronically late and not making quota. The plaintiff has rebutted this legitimate, non-discriminatory reason by showing many people were not terminated for not making quota and by her testimony that Edgil said he wanted an all male team. *See e.g., Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir.2002).

The court finds, considering the evidence and testimony in the light most favorable to the plaintiff, this creates a genuine issue of material fact and will therefore deny the defendants' motion for summary judgment on this count of the complaint.

### B. 42 U.S.C. § 1981 (Count II)

The plaintiff concedes that this claim has no merit and is due to be dismissed. Plaintiff memo at n. 1. The court shall so order.

### C. ADEA (Count III)

The plaintiff must establish that she belonged to the protected class, she was subject to adverse employment action, similarly situated employees outside the class were treated more favorably, and she was qualified for the job. *See e.g., Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1329-30 (11th Cir.1998). Assuming plaintiff meets this burden, the defendant must articulate a legitimate, non-discriminatory

reason for its employment decision. *Steger v. General Electric Co.,* 318 F.3d 1066, 1075 (11th Cir. 2003). An employer cannot prevail where the "legitimate reason did not sufficiently motivate the employer at the time of the decision." *Id.,* citing *Speedy v. Rexnord Corp.,* 243 F.3d 397, 403 (11th Cir.2001)

The plaintiff alleges she received a memo from Edgil stating that she was the "old-timer" on the team. Plaintiff Ex. 8; Edgil depo. at 76-77, 82; plaintiff depo. at 373. Edgil states this had to do with the plaintiff's seniority. Edgil at 110. She actually does not know who was on her team, but states she was not there longer than everyone else.[3] Plaintiff depo. at 308-309, 310-311. The plaintiff claims she asked Edgil about the memo and he said she was the "old lady" of the group and that she had children the age of the people she worked with. Plaintiff depo. at 315-316.

The defendant also argues that the plaintiff was fired for her performance. However, no one else on her team (all much younger than her) was fired for not making quota. Edgil depo. at 70. IKON's records show no one made quota consistently. The court finds that this demonstrates that the plaintiff was terminated when similarly situated, younger, employees were not. *See e.g., Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984).

---

[3]According to Edgil, Ted McQuiston (30 years old), Colleen Hopwood (32), Rachel Segui (28), Tammy Willoughby (27), Dean Farrar (25 or 26), Ben Stewart (25 or 26) and Stan Weldy (25) were on her team. Edgil depo. at 60.

The plaintiff claims she was made fun of because of her age. Plaintiff depo. at 58. She asserts Edgil called her "granny," "nana" and other such names. Plaintiff depo. at 273, 312. Edgil denies this. Edgil depo. at 82, 99, 121. She never complained about this when she worked there. Plaintiff depo. at 314, 317, 372. Farrar never heard Smith or Edgil call plaintiff any of these names. Farrar depo. at 42. Duwayne Hagen never heard any such comments. Hagen depo. at 58. Craig Cole never heard Edgil call plaintiff any of the names she alleges. Cole depo. at 111-112. The plaintiff states that a lot of people knew Edgil wanted a team of "younger people." Plaintiff depo. at 319.

Edgil states the plaintiff was terminated for three reasons: tardiness and absenteeism; poor performance; and team morale. Edgil depo. at 50-51. As to team morale, Edgil explained plaintiff was disruptive by being late for meetings or not showing up for them. Edgil depo. at 51-52. He states as to performance, the plaintiff was not getting remotely close to her quota. Edgil depo. at 59.

Farrar, who was 23, received plaintiff's territory and accounts. Plaintiff depo. at 57, Edgil depo. at 43-45. Farrar states he did not get these until after the plaintiff was terminated.[4] Farrar depo. at 23-26, 44-45.

In the light most favorable to the plaintiff, the plaintiff has produced evidence,

---

[4] Later, Farrar was encouraged to quit based on performance warnings. Cole depo. at 157. Edgil also is no longer employed there. Edgil depo. at 10.

through her own testimony, that Edgil made comments about her age all the time and that she was terminated so he could create a younger team. She was the oldest member of her team, on which no one made quota, but the only one terminated for this reason. The court shall deny the defendants' motion for summary judgment on this count of the complaint by separate order.

### D. ADA (Count IV)

The plaintiff claims she was fired, in part, because her employer perceived her as disabled. The plaintiff must establish that she is disabled or regarded as disabled, is a qualified individual, and that she was subjected to unlawful discrimination because of her disability.[5] *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir.2000). She states that she satisfies the first prong as she has a record of depression. Plaintiff memo in opposition at 22. She asserts Edgil regarded her as disabled. Plaintiff depo. at 367-368. The plaintiff could perform her essential job functions without accommodation, and her employer knew of her disability. Plaintiff depo. Ex. 11; plaintiff Ex. 10. She stated after she came back to work on August 2, 2002, the depression did not affect her beyond her taking medication. Plaintiff depo. at 83-84. She had no further problem with it until she was fired. Plaintiff depo. at 84-85. Edgil

---

[5] *See also Williams v. Motorola*, 303 F. 3d 1284, 1290 (11th Cir. 2002), stating that, to establish a prima facie case of discrimination under the ADA, the plaintiff must show a disability (whether real or perceived), that she was otherwise qualified to perform the essential functions of the job, and she was discriminated against based upon the (real or perceived) disability.

12

states he heard she had a breakdown from empty nest syndrome. Edgil depo. at 40-41, 48-49.

The plaintiff claims she was told by Edgil he could not give her any big accounts because she might get sick again in six months and that he did not know if she was stable enough to do her job. He told her he wanted people on his team he did not have to worry about getting sick. Plaintiff depo. at 276, 278. Edgil says he never said this. Edgil depo. at 96-97.

In the light most favorable to the plaintiff, given that the evidence concerning facts material to the plaintiff's claim under the ADA are in dispute, the court shall deny the motion for summary judgment on this claim by separate order.

### E. FMLA (Count V)

The FMLA entitles a covered employee to take up to twelve weeks of leave in a twelve month period for a "serious health condition" of the employee. *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1305 (11th Cir.2001). The FMLA prohibits an employer from interfering with this right. 29 U.S.C. § 2615.

The plaintiff received twelve weeks of leave under the FMLA. Plaintiff depo. at 65. Upon her return she was restored to the same position with the same pay and benefits. Plaintiff depo. at 250, 255-256. As the plaintiff has not produced any evidence that her rights under the FMLA were violated, the court shall dismiss this count by separate order.

### F. Breach of Contract (Count VI)

This claim by the plaintiff is based on lack of help, support and training she was promised when she was hired. Plaintiff depo. at 67-69. However, the plaintiff produces no evidence of any contract. The plaintiff also alleges she was promised a promotion and better territory by Smith. Plaintiff depo. at 71-72. This is not a contract under Alabama law. *See e.g., Wade v. Chase Manhattan Mortgage Corp.*, 994 F. Supp. 1369, 1376-78 (N.D.Ala.1997); *Burrell v. Carraway Methodist Hospital*, 607 So.2d 193, 196 (Ala.1992).

As no evidence of a contract exists, there can be no breach of a contract. As such, the court shall dismiss this claim by separate order.

### G. Fraud (Count VII)

The plaintiff has abandoned this claim as she has made no reference to it in her opposition to the defendants' motion for summary judgment. As such, the court shall grant the defendants' motion on this claim. Additionally, as this is the only claim to name Edgil, he will be dismissed by separate order.

**DONE** and **ORDERED** this the 3 day of March, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE